**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3834
_____

UNITED STATES OF AMERICA

v.

RACQUEL SANCHEZ,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cr-00148-001)
District Judge: Hon. David S. Cercone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 9, 2017
_____

Before: McKEE, RENDELL, and FUENTES, *Circuit Judges*.

(Opinion filed: August 1, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge.*

Defendant Racquel Sanchez appeals her conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846. Sanchez asserts that the evidence was insufficient to support a conviction for conspiracy to distribute methamphetamine because her one-time sale of a pound of methamphetamine only established a buyer-seller relationship, and not a conspiracy. For the reasons that follow, we will affirm the District Court's judgment of conviction.

## I.

Sanchez met David Wallace in Tucson, Arizona. They became friends and met frequently thereafter until Wallace moved to Cleveland, Ohio. Wallace later visited Tucson to find drugs to sell to his buyer, Neil Thomas. On his trip to Tucson, Wallace met with Sanchez and told her that he was looking for methamphetamine. She had never sold methamphetamine before, but she told Wallace that she would try to find some for him. After finding the drugs for Wallace, she and Wallace decided that Sanchez would mail the drugs to Wallace's cousin's address in Cleveland, Ohio.

Sanchez then flew to Ohio to retrieve the package of drugs and sell them to Wallace. When she arrived in Ohio, Wallace took the drugs, but told her that he did not have enough money to pay her for them. He offered to bring Sanchez to Pittsburgh, Pennsylvania, where he would obtain the money to pay her after selling the drugs to Thomas. Sanchez agreed and missed her pre-paid flight back home. After Wallace processed the drugs for resale, Sanchez, Wallace, and Wallace's cousin travelled to Pittsburgh where they met Thomas. However, he did not have enough money to pay

Sanchez for the drugs either. Accordingly, Sanchez, Wallace, and Wallace's cousin waited in Pittsburgh until Thomas sold some of the drugs. During their time together, Sanchez inquired about the packaging of the drugs and their sale price and monitored the sale of the drugs. Ultimately, Thomas could not gather enough money to pay Sanchez so Wallace partially paid Sanchez and returned approximately half of the remaining methamphetamine to her. Sanchez then returned to Arizona and did not contact Wallace again.

After a three-day trial, Sanchez was convicted of conspiracy to distribute methamphetamine based on her sale of the pound of methamphetamine to Wallace.

## II.

In a sufficiency of the evidence challenge, "we review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt [ ] beyond a reasonable doubt."[2] "Under this particularly deferential standard, we must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury."[3] "We must sustain the jury's verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision."[4]

## III.

To prove a conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the

---

[2] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

[3] *Id.* (citation and internal quotation marks omitted).

[4] *Id.* (citation and internal quotation marks omitted).

3

government must show: "(1) a shared unity of purpose [between the alleged conspirators]; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal."[5]  The conspiracy must be shown beyond a reasonable doubt, via direct or circumstantial evidence.[6]  The government need not show "that each defendant knew all of the conspiracy's details, goals, or other participants."[7]  Further, "although the prosecution must prove the defendant's knowledge of the conspiracy's specific objective, that knowledge need not be proven by direct evidence."[8]  In fact, "[i]t is not unusual that the government will not have direct evidence.  Knowledge is often proven by circumstances."[9]

A buyer-seller relationship, "without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy."[10]  Factors that demonstrate a defendant's involvement in a conspiracy, rather than a mere buyer-seller relationship, include:

> (1) the length of affiliation between the defendant and the conspiracy; (2) whether there is an established method of payment; (3) the extent to which transactions are standardized; (4) whether there is a demonstrated level of mutual trust; (5) whether transactions involved large amounts of drugs; and (6) whether the defendant purchased his drugs on credit.[11]

---

[5] *Id.* at 425 (citing *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010)); *see also United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016).

[6] *Caraballo-Rodriguez*, 726 F.3d at 425.

[7] *Bailey*, 840 F.3d at 108 (internal quotations omitted).

[8] *Caraballo-Rodriguez*, 726 F.3d at 431.

[9] *Id.* (alteration in original) (citation and internal quotation marks omitted).

[10] *United States v. Perez*, 280 F.3d 318, 343 (3d Cir. 2002) (internal quotation marks omitted).

[11] *Bailey*, 840 F.3d at 108 (internal quotation marks omitted) (citing *United States v. Gibbs*, 190 F.3d 188, 199 (3d Cir. 1999).

These factors "suggest[] that a defendant has full knowledge of, if not a stake in, a conspiracy."[12]

## IV.

Based upon all of the evidence presented at trial, we conclude that Sanchez's single sale of methamphetamine to Wallace was sufficient to establish a conspiracy beyond a reasonable doubt. Her seven-day involvement in this transaction clearly went beyond involvement in a buyer-seller relationship and reflected an agreement and unity of purpose that is the hallmark of a conspiracy.

Sanchez did not simply sell methamphetamine to Wallace. Nor was she merely aware of Wallace's transactions with Thomas. Instead, the evidence showed that she and Wallace agreed (i.e., "conspired") to sell the drugs to Thomas. Moreover, Sanchez did not insist that Wallace pay for the drugs before she gave them to him. Rather, she consigned the drugs to him to allow him to resell the drugs to get the funds to pay her. This reflects a level of trust, a common purpose, and a shared stake in the success of the overall venture that is much more indicative of an illicit agreement between Sanchez and Wallace than it is of a mere buyer-seller relationship.

In addition, Sanchez did not merely ship the drugs to Wallace. Instead, she shipped the methamphetamine to Cleveland, Ohio. She then went to Cleveland and waited with Wallace for the package with the drugs to arrive. They retrieved the drugs together after watching Wallace's cousin's house to ensure the package was not intercepted by law enforcement. This is additional proof of a shared interest in the

---

[12] *Id.* at 108–09 (citation and internal quotation marks omitted).

success of the enterprise and reflects Sanchez's stake in the success of Wallace's subsequent sale. The fact that Wallace would attempt to resell only to pay Sanchez does not undermine the existence of a conspiracy. To the contrary, it is additional proof of a conspiracy because it shows that Sanchez is vested in Wallace's resale of the drugs. In addition, Sanchez watched as Wallace and his cousin processed the drugs for resale – a resale that she would profit from. All of this evidence, when viewed together in the light most favorable to the government, establishes that there was more than sufficient proof of a conspiracy to support the jury's verdict.

## V.

For the reasons set forth above, we will affirm the conviction.